ALEXANDER CHURCHILL ET AL. *v.* HELEN SKJERDING, EXECUTRIX (ESTATE OF EVA CHURCHELOW), ET AL.
(11253)

LANDAU, HEIMAN and SCHALLER, Js.

Argued January 6—decision released May 11, 1993

*Irving H. Perlmutter,* for the appellants (named defendant et al.).

*Frederic E. Mascolo* and *Deborah M. DelBuono,* for the appellees (plaintiffs).

SCHALLER, J. The defendants appeal from a judgment for the plaintiffs, rendered after a jury trial, determining in effect that the document offered by the defendants for probate as the last will and testament of Eva Churchelow is not her last will and testament. The defendants, who are the proponents of the will, had prevailed in the Probate Court for the district of Waterbury where the document had been admitted.[1] From this decision, the plaintiffs, the children of Eva Churchelow's deceased son, who are among her heirs-at-law, took an appeal to the Superior Court. A jury trial resulted in a general verdict for the plaintiffs, which was accepted by the trial court. The defendants claim that the trial court improperly (1) admitted into evidence the testimony of Anna Dobensky and Patricia Ann Senich as expert witnesses without adequate foundation, (2) refused to set aside the verdict as being the result of partiality on the part of the jury in accepting the testimony of handwriting experts in the face of the testimony of execution eyewitnesses offered by the defendants, (3) permitted the jury to consider undue influence in the absence of evidence on that issue, and (4) permitted the jury to consider lack of testamentary capacity in the absence of evidence on that issue. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The decedent, Eva Churchelow, died on April 29, 1985. A document dated June 27, 1984, was purported to be her last will and testament. Two witnesses, Phyllis Matten and Pamela Daunis, attested to the will. Attached to the will were two maps on which appeared the decedent's handwritten name.

The parties agreed that three documents, unrelated to the will at issue, each bore the signature of the dece-

---

[1] We will refer in this opinion to the document offered as the last will and testament of Eva Churchelow as the "will" even though we affirm the trial court's decision that the will is not valid.

dent. A comparison of the signatures on these documents with those appearing on the will and the maps revealed numerous discrepancies. For example, the signature on the will differed considerably from the signatures on the three documents in terms of the types of strokes used and the slants inherent in the writing. Thus, because the signature on the will was different from that appearing on the three documents and because the parties stipulated that the three documents contained the authentic signature of the decedent, the will could not have borne the decedent's true signature.

The defendants filed an application in the Probate Court requesting administration of the will. After the Probate Court admitted the will to probate, the plaintiffs appealed the decision of the Probate Court to the Superior Court asserting various theories regarding the invalidity of the will. The case was tried to a jury which returned a verdict for the plaintiffs. The defendants filed a motion to set aside the verdict which the court denied. This appeal followed.

I

The defendants claim that the trial court improperly admitted into evidence the testimony of two handwriting analysts, Anna Dobensky and Patricia Ann Senich. We disagree.

"The trial court has wide discretion in ruling on the admissibility of expert testimony and, unless that discretion has been abused or the error is clear and involves a misconception of the law, its ruling will not be disturbed." *State* v. *Palmer,* 196 Conn. 157, 166, 491 A.2d 1075 (1985); *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976). "Expert testimony is admissible if the witness possesses a special skill or knowledge directly applicable to a matter in issue, the skill or knowledge is not commonly shared by the average per-

son, and the testimony would be helpful to the court or jury in considering the issues . . . ." *State* v. *Hasan,* 205 Conn. 485, 488, 534 A.2d 877 (1987).

The issue was whether the will of Churchelow was executed pursuant to the statutory requirements.[2] The plaintiffs contended that the signature on the will was not that of Churchelow. Under these circumstances, testimony from an expert qualified to analyze handwriting is helpful to the jury in determining the authenticity of the signature in question. Id.

At trial, the plaintiffs called Dobensky and Senich as expert witnesses. They testified to their training and experience in the area of handwriting analysis. The trial court, itself, questioned both witnesses regarding their past experiences as expert witnesses testifying in court. Both witnesses stated that they had previously testified in court with respect to signatures on wills. On the basis of the testimony concerning qualifications, the court determined that their expert testimony was admissible. We conclude that the trial court acted within its discretion in admitting the testimony of these two expert witnesses.[3]

## II

The defendants next claim that the evidence was insufficient to support a verdict for the plaintiffs. This claim, in essence, challenges the trial court's denial of the defendants' motion to set aside the verdict. "When reviewing the action of the trial court, we consider the

[2] General Statutes § 45a-251 provides in pertinent part: "A will or codicil shall not be valid to pass any property unless it is in writing, *subscribed by the testator* and attested by two witnesses, each of them subscribing in the testator's presence . . . ." (Emphasis added.)

[3] Our conclusion that the trial court properly admitted the testimony of the expert witnesses is dispositive of the defendants' claim that the jury was unduly partial toward their testimony. The jury was entitled to credit the testimony of these experts.

evidence in the light most favorable to sustaining the judgment. *Munson* v. *United Technologies Corporation,* 28 Conn. App. 184, 191, 609 A.2d 1066 (1992). 'A directed verdict is justified if on the evidence the jury could not reasonably and legally reach any other conclusion than that embodied in [a verdict for the defendants] . . . or if the evidence is so weak that it would be proper for the court to set aside a verdict rendered for the other party. . . . When a jury has returned a verdict and the trial court has refused to set it aside, [t]he court's decision will be upheld on appeal if, from the evidence presented, the jury could reasonably have concluded as it did.' (Citations omitted; internal quotation marks omitted.) *Hall* v. *Winfrey,* 27 Conn. App. 154, 157–58, 604 A.2d 1334, cert. denied, 222 Conn. 903, 606 A.2d 1327 (1992); *Boehm* v. *Kish,* 201 Conn. 385, 388–89, 517 A.2d 624 (1986)." *Torres* v. *Waterbury,* 30 Conn. App. 620, 622–23, 621 A.2d 764 (1993).

The proponents of a will bear the burden of proof as to due execution. *Gardner* v. *Balboni,* 218 Conn. 220, 225, 588 A.2d 634 (1991); *Berkeley* v. *Berkeley,* 152 Conn. 398, 401, 207 A.2d 579 (1965). A prima facie case of due execution may be established by calling to the witness stand the available attesting witnesses. *Shulman* v. *Shulman,* 150 Conn. 651, 656, 193 A.2d 525 (1963). "The quantum of proof required is the ordinary one of a fair preponderance of the evidence, that is, that, on the whole evidence, it should reasonably appear more probable than otherwise that the instrument was executed in the manner required by statute." *Wheat* v. *Wheat,* 156 Conn. 575, 581–82, 244 A.2d 359 (1968).

In attempting to meet their burden, the defendants called Attorney F. Patrick Zailckas and his secretary, Pamela Daunis, to the witness stand. Each witness testified to the execution of the will and the signing of the attached maps by a woman each believed to be Churchelow. Zailckas testified that he had drafted and super-

vised the execution of the will with the attached maps at his office and had administered the oath to the attesting witnesses, Phyllis Matten and Daunis. By the time of trial, Matten had died. Daunis had never met the decedent before attesting to the will. Zailckas further testified that he had met twice with Churchelow at his office prior to execution of the will.

In support of their position, the plaintiffs offered evidence in the form of expert testimony. Through extensive testimony, both expert witnesses offered their analyses of the signatures on the will, the attached maps and, in addition, three documents that all parties stipulated had been signed by Churchelow. Dobensky analyzed each letter of the signature on the will before the jury. Both witnesses discussed the composition of the signatures, including the types of strokes used and the slants inherent in the writing. After a comparative analysis of the signatures exhibited at trial, both Dobensky and Senich concluded that the will had not been executed by the same individual who signed the maps or the three additional documents.

"The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded their testimony. . . . The trier has the witnesses before it and is in the position to analyze all the evidence. The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Citations omitted; internal quotation marks omitted.) *Smith* v. *Smith,* 183 Conn. 121, 123, 438 A.2d 842 (1981). Where both parties had the opportunity to present their own evidence and cross-examine the witnesses of the opposing party, we cannot say that it is unreasonable for the jury to have concluded on the basis of the opinions of the expert witnesses that the signature on the will was not that of Churchelow.

Our determination that the jury reasonably could have concluded that Churchelow did not sign the will renders moot the remaining issues regarding undue influence and lack of testamentary capacity. In light of our conclusion, we need not consider whether the jury could have reached the inconsistent conclusion that the decedent was forced to sign the will. Similarly, whether the decedent was of sound mind when the will was executed is moot since the jury reasonably concluded that her signature did not appear on the will. Cf. *Canton Motorcar Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 457, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986) (jury verdict finding liability on express contract renders moot challenge to evidentiary ruling relating to liability for quasi-contract).

The judgment is affirmed.

In this opinion the other judges concurred.